IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs July 24, 2019

**DAVID N. SHAVER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Grainger County**
**Nos. 5978, 6156, 5815       James L. Gass, Judge**

_____

**No. E2018-01862-CCA-R3-PC**

_____

Petitioner, David N. Shaver, appeals the Grainger County Circuit Court's denial of his petition for post-conviction relief. Petitioner asserts that he received ineffective assistance of counsel in connection with his guilty plea proceedings. Specifically, he contends that trial counsel failed to properly explain the terms of the plea agreement and failed to conduct a proper investigation into the charge against Petitioner. After a thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Pepper Bowser, Rutledge, Tennessee, for the appellant, David N. Shaver.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and George C. Ioannides, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

*Guilty Plea Submission Hearing*

On May 3, 2017, Petitioner pled guilty by information to a violation of the sex offender registry in case number 5978. At the guilty plea submission hearing, the State recited the following factual basis for Petitioner's plea, to which Petitioner stipulated:

If [Petitioner's case had] gone to trial, the State would call Tabitha Hel[g]es[e]n[1] with TDOC, . . . and she would testify that on or about March 20th in a compliance check that [Petitioner] was on the sex offender registry for a conviction from Massachusetts, as well as on probation for a violation here in Grainger County. She found that he failed to notify her [of] the Xbox Account Profile entitled Paradox 33-David Shaver and had an on-line account that showed that he had some friends, as well as some on-line friends and some followers. It was activated in his name on 02/27/17. That would be a violation of the registry. That all occurred here in Grainger County.

Petitioner additionally conceded that he violated his probation in case number 5815.[2] The record reflects the following as the basis for the violation of Petitioner's probation:

[Petitioner] has failed to comply with the specialized probation conditions for sex offenders, three (3) counts. [Petitioner] did obtain Internet access on an Xbox system without written permission for Internet access. [Petitioner] failed to comply with the Sex Offender Registry and monitor[ing] program as required and failed to register an electronic profile user name and then [he] failed to pay [his] annual administrative fee.

Pursuant to a plea agreement, the trial court imposed Petitioner's original sentence of four years in case number 5815. In case number 5978, the trial court sentenced Petitioner, as a Range II multiple offender, to two years in the Tennessee Department of Correction, ordering the service of a minimum of 180 days.[3] Further, the trial court ordered the two-year sentence in case number 5978 to run concurrently with the four-year sentence in case number 5815.

---

[1] The record contains various spellings of Petitioner's probation officer's name. For clarity, we will use the predominate spelling of her name, Tabitha Helgesen.

[2] It appears from the record that, in case number 5815, Petitioner was convicted of a violation of the sex offender registry and received a four-year sentence, which was suspended to probation following the service of ninety days in jail.

[3] By operation of law, Petitioner was required to serve "not less than one hundred eighty (180) days" for his second violation of the sex offender registry. *See* Tenn. Code Ann. § 40-39-208(d) (2017).

*Post-conviction Hearing*

In January 2018, Petitioner filed a timely pro se petition for post-conviction relief, asserting that he received ineffective assistance of counsel. Following the appointment of post-conviction counsel, Petitioner filed an amended petition.

At an evidentiary hearing, Petitioner testified that the plea agreement that trial counsel gave him on the day of the guilty plea "was not the same plea agreement that [they] talked about two days before[.]" Petitioner stated that the plea agreement he ultimately signed was to a charge based on Petitioner's use of an Xbox "gamertag[.]"[4] However, Petitioner explained to trial counsel that it was not possible for him to have violated the sex offender registry because "of the way the [g]amertag works on the Xbox, which is like an email address." Petitioner asserted that he tried to explain to trial counsel, but trial counsel "wouldn't get the proof for it[.]" Petitioner said, "[Trial counsel] wouldn't get the proof for it and because of that I said I don't have the proof, I have to sign it, so that's why I'm here."

Petitioner testified that he had a "mental disability" and that it took him "a while" to "understand what [was] being said." He stated that he told trial counsel about this condition and recalled that trial counsel took "between an hour and an hour and a half" to go over the plea agreement with him. Petitioner acknowledged that trial counsel "broke [the plea agreement] down into smaller steps so that [Petitioner] could understand it." Petitioner claimed that the first plea agreement conveyed by trial counsel involved Petitioner's "online access" and that, under this "initial plea agreement[,]" Petitioner was to serve only six months.

Petitioner testified that, two days later, trial counsel told Petitioner, "[W]ell, it's going to be this" and gave him a second plea agreement, which included pleading guilty to the sex offender registry violation based on the gamertag. Petitioner asserted that he asked trial counsel multiple times if he was going to be charged "with the gamertag thing" and that he instructed trial counsel to call Petitioner's wife "and get the information to show that I had everything updated properly." Petitioner testified that he signed the plea agreement because it was his understanding that he did not have "the evidence" and "couldn't prove it[.]" Petitioner stated that, based on his conversations with trial counsel, he believed that the plea agreement meant that he would be serving seven and one-half months and then would be released. He stated that he asked trial counsel if he was executing his sentence in case number 5815, and trial counsel told him

---

[4] Petitioner explained that a gamertag was "like an email address . . . used for an Xbox game console. It basically identifies who you are in whichever name you create."

"no[.]" Petitioner stated that he was told that he would serve his "whole seven and [one-] half months here" in Grainger County.

Regarding the basis of the new charge, Petitioner testified that his probation officer did a random search of his residence, and she took a picture of his television screen, showing that he had "three friends and two followers[.]" When asked if he had discussed his online access with his probation officer, Petitioner stated, "No. I . . . I'm not sure." Regarding internet access, Petitioner claimed that he "really had none[,]" explaining that he did not have computers or a smartphone. He acknowledged that he had an Xbox gaming console but stated that he only downloaded games for his children and watched Netflix. Petitioner told trial counsel that it was not possible to have the username that he was alleged to have been using because Xbox "will not allow . . . past fifteen characters, fifteen letters." He then acknowledged that he had the PARADOX33 account but stated that he "had that registered . . . with [his] previous probation officer, Karen Blanchard." He testified that he shared this information with trial counsel. Petitioner testified that trial counsel could have subpoenaed Petitioner's wife and Ms. Blanchard to testify regarding the sex offender registry violation.

On cross-examination, Petitioner agreed that he had previously pled guilty to charges in Massachusetts and in Jefferson and Grainger Counties, and he acknowledged that he had understood the terms and conditions of the plea agreements in those cases. He agreed that the trial court went over his rights prior to accepting the guilty plea and that he told the trial court that he understood his rights. He explained that, when questioned by the trial court at the plea submission hearing, he agreed to the violation of probation because it "was my understanding that once I signed that paperwork[,] I pretty much had to do what that paperwork said." Petitioner stated, however, that he did not agree to put his four-year sentence into effect. When shown the plea paperwork, Petitioner agreed that the sentence announced before the trial court was included in the paperwork and that he had signed the paperwork on May 3, 2017. Petitioner said that trial counsel told him he would be back on probation, but he acknowledged that his plea paperwork did not say that. When asked about his signature on the plea paperwork, Petitioner stated, "Granted I might have signed it but I signed a lot of papers that I don't read and yes that is not a very good thing to do, I understand that but there's a lot of people who do that."

Trial counsel, an Assistant Public Defender in the Fourth Judicial District, testified that Petitioner told him about a "kind of learning disability" that he had and that "it was going to take [Petitioner] a little bit to understand a few things." Trial counsel testified that was why he "went slow" and spent "so much time" with Petitioner. Regarding his representation of Petitioner, trial counsel recalled, "So we met in . . . [s]essions [c]ourt, discussed the case with [Petitioner] a little bit, talked about what to expect from this,

bound it over[.]" Trial counsel stated that he met with Petitioner several times after his case was bound over and on the day of the guilty plea submission hearing. Trial counsel denied that "something changed" after he had been over the plea paperwork with Petitioner.

Trial counsel testified that he spoke to the probation officer, Ms. Helgesen; he also spoke to Petitioner and Petitioner's wife. Trial counsel stated that he too had an Xbox gaming console and was familiar with them. He recalled that he spoke to Petitioner the day before the plea day and "went over a few things." Trial counsel stated that he never discussed with Petitioner a six-month plea deal and that he never told him that the charge for violating the sex offender registry would be dismissed. He also did not recall telling Petitioner he would be able to serve his sentence in Grainger County. Trial counsel explained, "I get asked that a lot and my normal answer is, 'It's up to the Sheriff.'" Trial counsel did not recall Petitioner asking him to subpoena witnesses for a trial.

On cross-examination, trial counsel testified that Petitioner was arrested on the new charge in case number 5978 on March 29, 2017. When the case came to general sessions court on April 20, 2017, it was reset for April 27. Trial counsel met with Ms. Helgesen on April 27; she had her file, and trial counsel reviewed all of the evidence against Petitioner.

Trial counsel stated that he did not recall the State's plea offer changing at any point. He said that Petitioner appeared to understand the process and that he answered Petitioner's questions as they arose. Trial counsel agreed that he went over the plea agreement with Petitioner for about an hour and a half. He stated that, when he met with Petitioner at the jail "right before" his plea, trial counsel went over both parts of the plea—that Petitioner would serve his four-year sentence in case number 5815 and serve a concurrent sentence of two years in case number 5978.

Trial counsel explained that "[e]arly on" he discussed with Petitioner that Petitioner wanted to be placed back on probation. They also discussed the "benefits of [the State's] offer versus what would happen . . . since we weren't getting the offer that [Petitioner] wanted what would happen if we'd taken it to trial, all the evidence against [Petitioner], things like that." Petitioner wanted the minimum offer, but the State refused. Trial counsel said that it was not his practice for clients to sign plea paperwork with "questions still pending[.]" The following colloquy then occurred:

> [THE STATE]: And there was nothing about his condition that you saw or understood having met with him maybe at least twice in General Sessions, once or twice in the jail and then that morning; was there

- 5 -

anything about his condition that would lead you to believe he was in any way unable to understand what he was doing?

[TRIAL COUNSEL]: . . . [N]othing that flagged me[,] especially not that morning when we signed.

Trial counsel denied that there was an earlier plea agreement that Petitioner signed. He explained that there was only one offer and that was the offer that Petitioner accepted. Trial counsel stated that he did not recall Petitioner's mentioning the number of characters an Xbox username could have. Trial counsel explained, "I don't remember that at all. I think what we focused on was the . . . reported online access and that he had admissions of things and that's what we focused on."

At the conclusion of the hearing, the post-conviction court determined that Petitioner received effective assistance of counsel and that Petitioner's plea was knowing and voluntary. The post-conviction court found that "Petitioner's claim that he signed another agreement [was] not accurate." The court gave "great weight" to trial counsel's testimony that

> there was no other agreement signed, that there may have been some loose discussion beginning in [s]essions [c]ourt with [trial counsel's] original representation when it began in this case about what they had hoped for, about what they would strive for but that ultimately was never an agreement . . . the [post-conviction] [c]ourt finds that no other agreement was signed and that the one before the [c]ourt and approved by Judge Slone was . . . the plea agreement.

The post-conviction court further determined that trial counsel spent adequate time explaining the terms of the plea agreement with Petitioner and that Petitioner understood "what the terms of his agreement were [and] what he was agreeing to." The post-conviction court noted that the trial court thoroughly advised Petitioner of his rights and specifically addressed both the plea by information and the probation violation. The post-conviction court found that Petitioner was "afforded the opportunity to ask questions, to disagree, but [he] indicated that he understood" and that "nothing in the record indicate[d] . . . that [Petitioner] had any questions or misunderstanding about any of the terms." Accordingly, the post-conviction court denied relief. This timely appeal follows.

## Analysis

On appeal, Petitioner contends that the post-conviction court erred in denying relief. He asserts that he received ineffective assistance of counsel based on trial counsel's failure to properly advise him regarding the plea agreement and failure to conduct further investigation "into his gamertag name in the charging document." The State responds that Petitioner received effective assistance of counsel. We agree with the State.

### Standard of Review

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

### Ineffective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of

counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Don Allen Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *4 (Tenn. Ct. Crim. App. April 26, 2012). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. *See Hill*, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Trial counsel has a duty to "conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed." *Baxter*, 523 S.W.2d at 933. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691; *see also State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

However, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691.

In cases where a petitioner contends that trial counsel failed to present a witness in support of the petitioner's defense, the petitioner must present such witness at the post-conviction hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither a trial nor an appellate judge can speculate as to whether that witness's testimony would have been favorable to the defense. *Id.* Therefore, the petitioner must "produce a material witness who . . . would have testified favorably in support of his defense if called [at trial]. Otherwise, the petitioner fails to establish the prejudice requirement mandated by *Strickland v. Washington*." *Id.* at 758.

Petitioner first asserts that trial counsel failed to properly advise him regarding the plea agreement. He contends that trial counsel did not "go[] over the offer that was signed off on by [Petitioner]." In addressing this issue, the post-conviction court found that "Petitioner's claim that he signed another agreement [was] not accurate." The post-conviction court credited trial counsel's testimony that "there was no other agreement signed . . . and that the one before the [c]ourt and approved by Judge Slone was . . . the plea agreement." The post-conviction court further determined that trial counsel spent adequate time explaining the terms of the plea agreement with Petitioner and that Petitioner understood "what the terms of his agreement were [and] what he was agreeing to."

The record does not preponderate against the post-conviction court's findings. Trial counsel testified that he went over the plea agreement with Petitioner for about an hour and a half. He stated that, when he met with Petitioner at the jail "right before" his plea, trial counsel went over both parts of the plea—that Petitioner would serve his four-year sentence in case number 5815 and serve a concurrent sentence of two years in case number 5978. Trial counsel testified that there was only one offer from the State and that it did not change. He stated that Petitioner appeared to understand the process and that he answered Petitioner's questions before Petitioner signed the plea paperwork. Petitioner has not established deficient performance based on this claim. Because Petitioner has failed to establish deficient performance, there is no need to consider the prejudice factor. *See Finch*, 226 S.W.3d at 316.

Petitioner also contends that trial counsel failed to conduct further investigation "into his gamertag name." Regarding this issue, Petitioner testified that he told trial counsel that it was not possible to have the username that he was alleged to have been using because Xbox "will not allow . . . past fifteen characters, fifteen letters." He then acknowledged that he had the PARADOX33 account but stated that he "had that

registered . . . with [his] previous probation officer, Karen Blanchard." Petitioner testified that trial counsel could have subpoenaed Petitioner's wife and Ms. Blanchard to testify about this issue.

Trial counsel testified that he met with Petitioner's current probation officer, Ms. Helgesen, and reviewed her file and all of the evidence against Petitioner. Trial counsel also spoke to Petitioner and Petitioner's wife. Trial counsel stated that he too had an Xbox gaming console and was familiar with them. Trial counsel stated that he did not recall Petitioner's mentioning the number characters an Xbox username could have. Trial counsel explained, "I don't remember that at all. I think what we focused on was the . . . reported online access and that he had admissions of things and that's what we focused on."

Although the post-conviction court noted Petitioner's claim in its ruling, it did not specifically address the issue. Nevertheless, in finding that Petitioner received effective assistance of counsel, the post-conviction court impliedly accredited trial counsel's testimony that he conducted an investigation into the charges and that the issue of the number of characters an Xbox username or gamertag could have was not the focus of the defense. Moreover, Petitioner failed to present evidence of what trial counsel would have uncovered if he had further investigated Petitioner's "gamertag name[,]" and on appeal, he has not explained how the additional evidence would have assisted in his defense. Petitioner has established neither deficient performance nor prejudice based on this claim. *See Hill*, 474 U.S. at 58-59. Accordingly, he is not entitled to relief.

### Conclusion

For the aforementioned reasons, we affirm the judgment of the post-conviction court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE